P. L. MANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9123.   Promulgated September 22, 1927.

1. The proportionate part of the profits from the operation of a plantation set aside for the manager to be paid to him in case the profits over a 10-year period amount to a given figure are not deductible from the gross income of the owner of the plantation who kept his books of account upon a cash receipts and disbursements basis.

2. The profit realized by an individual from the sale of a half interest in real estate acquired subsequent to March 1, 1913, is to be computed on the basis of cost and not on the value at the date that the other half interest was sold to an individual who was taken in as a partner in the business conducted.

3. The correct amount of profit on the sale of personalty determined.

4. Pledges of contributions to charitable and religious institutions not paid within the year are not deductible from gross income in returns made on a cash receipts and disbursements basis.

*Robert Ash, Esq.*, and *Thomas J. Reilly, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income tax for the fiscal year ended January 31, 1920, in the amount of $39,362.44, only $10,374.56 of which is in controversy.

The petitioner is a cotton planter, merchant, lender of money, director of several banks, and a member of several partnerships, with his residence and principal place of business at Glen Allan, Miss. His income-tax return for the calendar year 1919, and an amended return for the fiscal year ended January 31, 1920, show that they were made on the basis of income "received." His accounts for all of his various businesses were kept in one set of books. His accounts showing his farming operations were kept on a cash basis. The accounts showing merchandise operations showed inventories at the beginning and close of each year. His accounts showing income from interest showed the interest accrued each year whether received or not. His income-tax returns were made in accordance with his books of account.

On January 1, 1918, the petitioner and R. L. Jordan entered into a contract whereby Jordan was employed to manage a plantation owned by the petitioner, known as the "Mound Plantation." The contract provided in part:

Said Jordan is to receive for his services, a salary of $1,200.00 per year, to be drawn in equal monthly installments; and in addition to said salary, said Jordan is to be given an opportunity of acquiring an undivided ¼ interest in said plantation, upon the following terms:—

Said Mann has agreed to put what is known as "Mound Plantation," all open land east of the Y. & M. V. R. R., our "Linden Plantation" and one half interest in woodland at the price of $59,220.50: If from the earnings of said plantation, said Mann receives the sum of $59,220.00 with six per cent interest by January 1, 1929, he agrees to execute a deed conveying to said Jordan an undivided ¼ interest in said property, that is, said money being received by said Mann, as the result of the management of said plantation, by said Jordan, and this to be received net after deducting all expense of every kind incident to the management of said plantation.

If said Jordan should die during the term of twelve years, death terminates the contract, but said Mann agrees to pay to his estate or legatees ¼ of whatever the plantation may have earned up to the end of the year in which such death shall occur; and this contract shall not prevent said Mann from selling or disposing of said plantation, at any time he sees fit, but in the event of such disposition being made, said Jordan is likewise to receive ¼ of whatever amount has been earned by the property up to the end of the year sale is made (by earned is meant earned net, after deducting all expenses, repairs, improvements etc).

The six per cent is to be paid annually as part of the expenses of the plantation, upon whatever portion of the $59,220.00 that remains unpaid after deducting the earnings each year.

It is understood that Jordan is to continue the management of property during the time specified to January 1, 1929. If he should give up the position as manager, the contract is thereby terminated and he is not entitled to any part of the earnings which may have arisen from the plantation.

Each year the petitioner credited to Jordan, on his books, one-fourth of the earnings of the Mound Plantation in order to carry

out the provisions of the contract. The Commissioner disallowed as a deduction the amounts so credited to Jordan and increased net income correspondingly.

Prior to 1915 the petitioner was the sole owner of a plantation known as the Solitaire Plantation, which cost $10,917.12. On November 23, 1915, the petitioner formed a partnership with W. P. Rhodes for the operation of this plantation, with the understanding that each party was to contribute and share in the profits share and share alike. It was agreed that the plantation had a value of $18,750. Thereupon, Rhodes paid the petitioner the amount of $9,375 for his one-half interest in the plantation.

During the taxable year ended January 31, 1920, the petitioner and Rhodes sold the plantation to one M. R. Williams. In computing the profit on the sale the petitioner used $9,375 as the cost of his one-half interest in the plantation. The Commissioner determined that Rhodes' one-half interest in the plantation cost $5,458.56, and that the difference between that amount and one-half of the selling price was the profit made by the petitioner from the sale.

Soon after the sale of the Solitaire Plantation, the partnership sold certain personal property connected with the operation of the plantation at a price of $4,000. Included in the property sold were tenants' accounts receivable in the amount of $1,038.13. With the exception of the accounts receivable the cost of acquiring the other property sold had been charged to plantation expenses upon the partnership books of account. The accounts receivable from the tenants, however, stood on the partnership books as assets.

During the taxable year the petitioner signed subscriptions promising to pay $5,000 for the construction of the Kings Daughters Hospital at Greenville, Miss., and $4,500 for the construction of a Methodist Church at Glen Allan, Miss. The subscription blank signed by the petitioner for the payment of $5,000 for the Kings Daughters Hospital read as follows:

THE KING'S DAUGHTERS MEMORIAL HOSPITAL OF THE DELTA,

*Greenville, Miss., Dec. 19, 1919.*

| | |
|---|---|
| $5,000.00 (total) | |
| Three months after date, | $1250.00 |
| Six months after date, | 1250.00 |
| Nine months after date, | 1250.00 |
| Twelve months after date, | 1250.00 |

I promise to pay the above sums to the Treasurer or order of the Building Fund of the Kings Daughters' Memorial Hospital of the Delta.

(Signed)          Name—P. L. Mann
                       Address—Glen Allan.

Name of Bank, Commercial Sav. Bank.

N. B.—If at the expiration of six months the entire sum of $250,000.00 has not been subscribed you will be released from your pledge and your subscription returned.

The subscription of $4,500 for the construction of a Methodist Church at Glen Allan was of a similar nature. No part of the subscription of $5,000 for the construction of the hospital had been paid up to April 1, 1926, and the subscription of $4,500 for the construction of a Methodist Church was not paid until 1924.

OPINION.

SMITH: 1. The petitioner contends that his books of account and his income-tax returns were made on the accrual basis and not on the basis of cash receipts and disbursements. The revenue agent who examined the books of account came to the conclusion that the books were kept on a cash receipts and disbursements basis and the returns clearly indicate that they were made on that basis. The fact that inventories were used in computing the profit of the merchandising business or that interest was returned upon the basis of the interest which accrued and not on the basis of interest received is not conclusive. The evidence fails to show that the books of account or that the original return for the calendar year 1919, and the amended return for the fiscal year ended January 31, 1920, were made on an accrual basis.

The petitioner contends that he is entitled to deduct from the gross income of the taxable year the amount of the profit which he previously set aside on his books of account to be paid to R. L. Jordan in accordance with his contract with Jordan of January 1, 1918. Clearly this amount was not paid to Jordan during the taxable year. Furthermore, there was only a contingency that it ever would be paid and under the decisions of the Board a contingent reserve set up to meet a possible liability is not a proper deduction from gross income. *William J. Ostheimer*, 1 B. T. A. 18; *Uvalde Company*, 1 B. T. A. 932.

2. The second point in issue is the basis for determining the profit upon the sale of a plantation, the petitioner claiming that although his one-half interest in the plantation cost $5,458.56, nevertheless, he entered into a partnership in 1915 for the operation of the plantation and his partner, W. P. Rhodes, paid him $9,375 for his one-half interest in the partnership. The evidence would indicate that Rhodes acquired for this $9,375 an interest in certain live stock, the cost of which is not in evidence. The petitioner's contention is that inasmuch as $9,375 is the basis for determining the profit made by his partner upon the sale, the same basis should be used for determining his own profit and not the admitted cost of $5,458.56.

There can be no question as to the amount of the profit realized by the petitioner from the transaction resulting in the sale of his half interest in the plantation. It was the difference between

$5,458.56, the cost of his half interest therein, and the sale price. Section 202(a) prescribes the basis for determining the profit in the case of sale or other disposition of property. Apparently the plantation was acquired subsequent to March 1, 1913. There is no evidence that it was acquired before that date. The cost of the half interest is therefore the basis to be used in computing the gain.

3. The Commissioner computed a profit of $4,000 upon the sale of personalty for $4,000. This personalty included live stock, farming implements, harvested crops, and accounts receivable of $1,038.13. The cost of these assets with the exception of the accounts receivable had been charged to plantation expense. For lack of evidence as to the cost of such assets other than the accounts receivable it must be held that the correct profit realized from the sale was $2,961.87—the difference between $4,000 and $1,038.13.

4. The petitioner contends that he is entitled to deduct from gross income of the fiscal year ended January 31, 1920, the amount of certain subscriptions he made to charitable organizations. In support of his contention he cites *Appeal of C. H. Musselman*, 1 B. T. A. 41, in which it appeared that Musselman, who kept his books of account upon an accrual basis, had become bound under an agreement to make a contribution to a charitable organization. The facts in the instant case are entirely different from those which obtain in the *Musselman* appeal. There is nothing in the record to show that the petitioner was in any wise bound by his subscription agreements and the evidence is conclusive that the amounts were not paid during the taxable year. We discover no error in the action of the respondent in disallowing the deductions.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*